# CHARLESTON.

## TURK *v.* SHEIN.

### Submitted March 9, 1904—Decided March 29, 1904.

1.  OFFSET—*Final Judgment.*

    On the 28th day of March, 1898, S. brought his action against T. before a justice, on a store account for $2.60. On the same day T. paid to the justice the $2.60 and costs, and the action was dismissed, and at the same time T. commenced his action against S. for $100 loaned money. S. answered the action of T. that as the claim of plaintiff existed at the time the action of S. was brought, and plaintiff failed to assert same in said action as a set-off or otherwise he was precluded under section 55, chapter 50, Code, from maintaining his action for its recovery. *Held*: Neither of the claims having been litigated to final judgment the claim of T. is not affected by said section 55. (p. 470.)

2.  NONSUIT—*Reinstatement—Notice.*

    When a plaintiff has suffered a nonsuit with leave to re-instate his action "within the time prescribed by law; by payment of all costs, etc." On payment of all costs by, and on motion of plaintiff the nonsuit was set aside and the cause re-instated

without notice to defendant, who appeared generally and moved to dismiss the action for want of such notice. *Held:* Not error to refuse to dismiss as by general appearance defendant waived notice.    (p. 471.)

Error to Circuit Court, Mingo county.

Action by John Turk against S. Shein. Judgment for plaintiff, and defendant brings error.

*Reversed.*

SHEPPARD & GOODYKOONTZ, for plaintiff in error.

H. K. SHUMATE, for defendant in error.

McWHORTER, JUDGE:

John Turk brought his action before Justice White of Mingo county for $100, the money due on contract against S. Shein. The case was tried on April 2, 1898, and judgment rendered in favor of plaintiff for $100 and costs. Shein obtained a writ of *certiorari* removing the cause to the circuit court of Mingo county. On May 5, 1898, plaintiff moved to dismiss the *certiorari* as having been improvidently awarded, which motion was overruled, but no exception taken. The court then set aside the verdict of the jury and judgment of the justice and retained the case for trial. On the 6th of September, 1898, the plaintiff failing to prosecute his suit, nonsuit was entered with leave to re-instate within the time required by law. On the 9th of January, 1899, Turk had the case re-instated by paying the costs of the nonsuit. The court set aside the nonsuit. On the 18th day of May, 1900, Shein appeared by counsel and moved to dismiss the action because the case was reinstated without notice having been given as required by section 12, chapter 128, Code. The motion was overruled by the court, to which ruling defendant excepted. Shein then objected to any further proceedings being taken in the action, which objection was overruled by the court, to which ruling the defendant excepted. A jury was empaneled and returned a verdict of $112.50 for plaintiff. The defendant moved to set aside the verdict, which motion was overruled and judgment entered thereon. The defendant took three bills of exceptions to the rulings of the court, which were signed, sealed, and saved to him, and made a part of the record.

Bill of exceptions number 1, relates to certain evidence admitted on the part of the plaintiff and objected and excepted to by the defendant. The first mentioned and pointed out in the bill of exceptions is a question propounded to plaintiff, with answer thereto: "Have you ever been sued before Shein sued you?" His answer was: "No, sir." And the further testimony excepted to was that of witness Sarah Tackett, where the question is asked: "Do you know of him (meaning Turk) coming up there in 1896—I mean about Christmas of that year—to get any money out of his trunk." A. "Yes, sir, he came up there and took out of his trunk a right smart roll of money, I don't know how much, and some one asked him what he was." "Mrs. Tackett, at the time Mr. Turk took out this money out of his trunk did you hear him make any statement as to what he intended to do with it; what his intentions were for getting it." A. "Yes, sir, he said he was going to take it to Mr. Shein." To which questions and answers defendant objected and excepted. It is claimed by counsel for Turk that these questions and answers of Mrs. Tackett were a part of the *res gestae.* The question asked of plaintiff, whether he had ever been sued before Shein sued him, was immaterial and irrevelant and should not have been asked or answered, but we cannot see how it could have influenced the jury or prejudiced the defendant, and while it was error it is not reversible error. The testimony of witness Tackett, is calculated to influence the jury and being incompetent should not have been admitted. Counsel for defendant in error contends that what Turk said, as related by Mrs. Tackett, on taking the money out of his trunk was a part of the *res gestae* and properly admitted, and cites the case of *Mayes* v. *Power,* 4 S. E. 681 (Ga.) in support of his contention. In that case the defendant called to plaintiff's intestate across the river. He went across the river to the defendant; they had some conversation together; he returned to his house and got his wife to count him out a sum of money; stated that he was going to lend it to the defendant; he took the money with him, went back across the river and was seen to hand something to the defendant, and on his return bade his family remembered that defendant had got said sum of money, and to get the book and he would charge it. This transaction seems to have taken place in view of the family, and all in a

very short time, was really one single transaction; while in case at bar there is no immediate connection, indeed no connection at all, it might have been days before or days· after, according to the evidence between the act of getting the money from the trunk by the plaintiff and passing the same over to the defendant. The witness, Mrs. Tacket, saw nothing further than the taking of the money from the trunk as she said "A right smart roll of money." She did not know how much. It does not appear whether or not this was on the same day that he claims to have given the money to Shein. Indeed he does not pretend to fix the day on which he let Shein have the money. If he had gone directly after taking the money from his trunk and had been seen by Mrs. Tackett, to hand something to Shein, even though he did not return and say anything further to her or in her presence about it, the case cited would perhaps, have been applicable. Several other cases are cited by the defendant in error, but that of *Mayes* v. *Power* is their main reliance, and while, it is a much stronger case than the case at bar, yet it was evidently regarded by the court as by no means conclusive of the fact of the loaning of money, but as a circumstance tending to prove it, to be considered by the jury. The court says: "We think that what Power said at the time was admissible as a part of the *res gestae,* and these statements of Power coupled with the fact that he was seen to return across the river and hand something to Mayes were sufficient to authorize the jury to conclude he had let Mayes have the money." It is there further said "Bishop swore that Power had before dealt with Mayes in the same way, taking no notes for the money; and this, we think, was competent evidence." The evidence of Mrs. Tackett, of the plaintiff taking the money from the trunk and making the statement that he was going to let Shein have it, is not coupled with any fact related with the act of Turk turning the money over to Shein so as to make it a part of the *res gestae* and it was improperly admitted as evidence.

Bill of exceptions, number two, is to the refusal of the court to give to the jury the following instructions:

"The court instructs the jury that if they believe from the evidence in this case that the defendant Shein borrowed the $100.00 in controversy from the plaintiff Turk, and that after-

wards a suit was brought by the defendant Shein against the plaintiff Turk upon a store account of $2.60, and the plaintiff was personally served with process or appeared and answered the action, and if they further find that the $100.00 in controversy was due the plaintiff Turk at the time the action was brought by Shein against Turk, then the jury should find for the defendant, Shein, in this action."

This instruction is based upon section 55. chapter 50, of the Code, where it is provided that: "If the defendant, at the time the plaintiff's action is commenced, has any credit or set-off or claim to allege in defense or reduction of the plaintiff's demand, and be personally served with process in the suit, or appear and answer the action he shall produce the same with his evidence in support thereof in the cause or be forever precluded from maintaining any action for the recovery thereof." The defendant proved by the justice, M. Z. White, the bringing of the suit by Shein against Turk for the $2.60, and introduced the papers in the cause, but it was shown by White's testimony that the defendant in the cause, Turk, paid him the amount of the claim and the costs on the same day the writ in the case was issued, so the case was ended the day it was brought, the 28th day of March, 1898, the summons beginning the suit was issued on that day, returnable on the 2d day of April, 1898, so that the matters were not litigated at all. In *Riley* v. *Jarvis,* 43 W. Va. 43, (syllabus point 6), "A plea of *res judicata* must show that the former judgment was on the merits." At page 47, it is said in the opinion of the court, "Appellants complain of the rejection of two pleas. One was a plea of *res judicata,* based on a judgment of a justice for some cause in favor of defendants. It is faulty, because it does not in any way show that the dismissal of the suit before the justice was on the merits, so as to be a bar to a second suit; for, if it was a nonsuit or any other of many causes not precluding another suit, it would not bar. 1 Bart. Law Prac. 534, 535; 7 Rob. Prac. 221; 1 Greenl. Ev. section 530; *Burgess* v. *Sug.,* 2 Stew. & P. 341. A plea should aver that the decision was on the merits, or it should at least appear by the record vouched." It appears from the record that there was no litigation between the parties on this claim of $2.60, and section 55 can only apply after

matters between the parties have been litigated. The court did not err in refusing to give the instruction.

The third bill of exceptions claims that the court erred in not setting aside the verdict and granting the defendant a new trial; first, because the said verdict was contrary to the law and the evidence, and second, third and fifth because of the matters set out in the first and second bills of exceptions, and fourth, "because the court erred in failing to strike this cause from the docket and proceeding to trial herein." The plaintiff suffered a nonsuit on the 6th day of September, 1898 for failure to prosecute his suit. In the order of the nonsuit leave was granted to the defendant to reinstate within the time prescribed by law upon payment of all costs. The cause was reinstated on motion of plaintiff and the payment of all costs by him on the 9th day of January, 1899. On the 18th day of May, 1900, the defendant appeared and moved to dismiss the action, which motion being overruled the defendant objected to any further proceedings being taken in the action, which objection was also overruled, and the cause proceeded to trial, a jury being empaneled.

The reinstatement of the case without notice entitled the defendant to a continuance, if asked for, and not having asked it he was presumed to have waived his right to continuance. The general appearance of defendant in the case after reinstatement, is a waiver of the notice

*Quaere*: Whether a special appearance of defendant for the purpose, only, of moving the dismissal of the case because reinstated without the notice provided by statute would have required its dismissal?

For the reasons stated, the judgment of the court is reversed, the verdict set aside and the cause remanded to the circuit court of Mingo county for a new trial to be had therein.

*Reversed.*